**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

UNITED STATES OF AMERICA,

                    Plaintiff,                  CRIMINAL ACTION

v.                                      Case No. 13-20011-01-KHV

BRETT J. WILLIAMSON,

                    Defendant.

## REPORT AND RECOMMENDATION

## NOTICE

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), file written objections to this Report and Recommendation. A party must file any objections with the clerk of the district court within the fourteen-day period if that party wants to have appellate review of the proposed findings of fact, conclusions of law, or recommended disposition. Failure to file objections may constitute a waiver of those objections on subsequent appellate review.

## I.      NATURE OF THE MATTER BEFORE THE COURT

This matter is before the Court on Defendant Williamson's Motion to Suppress Statements (ECF No. 20) and Motion to Suppress Evidence (ECF No. 21). In his first motion, Defendant Williamson seeks to suppress as evidence statements he made: (1) during a police interrogation on June 4, 2012 when he was first interviewed by two Lawrence, Kansas police department detectives at the Chain of Lakes, Indiana Correctional Facility; and (2) while being transported from the Douglas County, Kansas jail to his first appearance in federal court on

March 5, 2013. Williamson argues that the statements he made while being interrogated for two and a half hours at the Chain of Lakes Correctional Facility in Chain of Lakes, Indiana should be suppressed because the failure to fully record the statements resulted in the destruction of potentially useful evidence. He argues that his March 5, 2013 statements made while being transported from jail to his first appearance in federal court should be suppressed as inadmissible under 18 U.S.C. § 3501(c) because they were not made within six hours immediately following his arrest and constituted an interrogation. In his second motion, Defendant Williamson seeks to suppress as evidence seized during the search of his Indiana residence, arguing that the search warrant was defective.

On January 30, 2014, District Judge Vratil referred these Motions for a Report and Recommendation (ECF No. 43). A motion hearing was held on March 11, 2014 and the motions were taken under advisement.

## II.    FINDINGS OF FACT

Mr. Williamson is charged with three counts of production of child pornography, in violation of 18 U.S.C. § 2251(a), and three counts of use of a facility of interstate commerce to coerce and entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b).

In April 2012, upon a report by the mother of a minor female, the Lawrence Kansas Police Department began conducting an investigation into the identity of the person with whom the minor had communicated. During the investigation of the Yahoo! username account reportedly used to communicate with the minor, the Lawrence police officers identified Defendant Williamson as a suspect in the case.

On April 20, 2012, Lawrence Police detective Scott Slifer obtained a search warrant seeking subscriber information, log-in, internet protocol addresses, cached email and other

information from Yahoo! for the specific Yahoo! username that Williamson had been using to communicate with the minor. The search warrant, signed by Douglas County, Kansas District Judge Peggy Kittel, is clearly titled a "SEARCH WARRANT" and is addressed "TO ALL LAW ENFORCEMENT OFFICERS OF THE STATE OF KANSAS."[1]   The search warrant begins with the statement: "Having evidence under oath before me from which I find there is probably cause to believe a crime is being committed . . . ."  The search warrant further commands that it be executed within 96 hours of its issuance and that it be returned whether executed or not.

On May 3, 2012, detective Slifer obtained a search warrant for two internet protocol addresses belonging to Frontier Communication and identified from the information received from Yahoo!.  The search warrant, signed by Douglas County, Kansas District Judge Kay Huff, is titled a "SEARCH WARRANT" and is addressed "TO ALL LAW ENFORCEMENT OFFICERS OF THE STATE OF KANSAS."[2]  Like the Yahoo! search warrant, it also contains the statement: "Having evidence under oath before me from which I find there is probably cause to believe a crime is being committed . . . ."  It also contains the same 96-hour time limitation for execution and requirement that it be returned.

The information obtained from Frontier Communications indicated the IP addresses identified in the search warrant were leased to a residential customer in Fort Wayne, Indiana. Further investigation revealed that Defendant Williamson resides at that address with his mother.

On June 4, 2012, detectives Slifer and Mike Schneider traveled to Fort Wayne, Indiana to meet with local detectives about obtaining a search warrant to search the residential address identified as leasing the targeted IP address. At approximately 9:30 a.m. that day, Detectives

---

[1] Def.'s Ex. 4.

[2] Def.'s Ex. 5.

Slifer and Schneider met with Allen County, Indiana Circuit Court Senior Judge Robert Schmoll for the purposes of obtaining search warrant for the single family house located in Fort Wayne, Indiana, where Defendant Williamson resided with his mother. Detective Slifer presented two documents to Senior Judge Schmoll: (1) a five-page, single-spaced affidavit in support of a search warrant of Defendant Williamson's residence, and (2) an untitled one-page purported search warrant. The first five paragraphs of both the affidavit and warrant are identical. Both the affidavit and search warrant identify the specific address of the place to be searched and described the items to be seized as follows:

> All devices capable of storing electronic information including but not limited to: desktop computers, laptop computers, handheld phones, tablet computers (such as iPads or Kindle Fires), external or internal hard disk drives, gaming consoles, and hand-held devices (such as iPod).[3]

The affidavit and warrant also both contain the statement:

> FURTHER, of the purpose of showing probable cause that a crime has been or is being committed and that the above described items exist and are located at the above described place, Affiant states the following facts which he has reasonable grounds to believe and does believe to be true; to-wit:

Both the affidavit and the search warrant conclude with a signature line for the affiant, and then the words "Signed and sworn to before me on June 04, 2012, by Scott Slifer" and another signature line for the judge. Unlike the warrant, the affidavit also sets forth twenty-one paragraphs of facts to establish probable cause that a crime has been committed and the described items exist and are located at the described place.

After swearing Detective Slifer to the probable cause affidavit, Judge Schmoll approved and signed both the warrant and the affidavit. However, due to an oversight, detective Slifer signed the warrant and did not sign the probable cause affidavit.

---

[3] Government Ex. 1 and 2.

After obtaining the search warrant, Detectives Schneider and Slifer along with a Fort Wayne police officer and two detectives arrived at Defendant Williamson's residence at approximately 10:15 a.m. on June 4, 2012 to execute the search warrant. Numerous items were seized from the residence. The items included two computer towers, seven laptop computers, one digital camera, miscellaneous discs, nine hard drives, a cell phone, and a glass pipe. An officer with the Fort Wayne Police Department later returned the search warrant return.

After executing the search warrant on June 4, 2012, Detectives Slifer and Schneider drove to the Chain of Lakes Correctional Facility in Chain of Lakes, Indiana, to interview Williamson. At the start of the interrogation, detective Slifer advised Williamson of his Miranda rights. After a break right after the interrogation started, detective Slifer again re-read Williamson his Miranda rights. Williamson verbally and in writing waived those rights.

The interrogation began at approximately 4:40 p.m. on June 4, 2012 and lasted approximately two and one-half hours. Williamson initially denied knowledge about the Yahoo! username and communicating with the minor. Detective Slifer then told Williamson that they had just come from searching his house. At that point, Williamson started making incriminating statements to the detectives. He also provided a signed written statement to the detectives at the conclusion of the interrogation.

According to the detectives, although they tried to record the interrogation, the battery in the audio recording device failed after recording the first 17 minutes of the interrogation. Detective Slifer was not aware the battery had failed until the interrogation was concluded. Detective Schneider realized that the device's battery light had come on at some point during the interview but opted to not stop the interrogation.

On June 7, 2012, detective Slifer applied for a search warrant to search the contents of computers and other media seized from Williamson's home in Indiana. Douglas County, Kansas District Judge Sally Pokorny issued the search warrant.

On January 9, 2013, Williamson was charged by Information in Douglas County, Kansas and an arrest warrant signed on January 18, 2013. Williamson was arrested in Indiana on the Kansas state warrant on January 30, 2013. Williamson made his first appearance on the Kansas state charges on February 5, 2013. He was thereafter held in custody in the Douglas County Jail.

On February 13, 2013, the grand jury for the United States District Court for the District of Kansas returned an indictment against Defendant Williamson. The Indictment charges Williamson with three counts of production of child pornography, and three counts of use of a facility of interstate commerce to coerce and entice a minor to engage in sexual activity. A federal Warrant for Arrest was issued on February 13, 2013. The state charges brought against Williamson were dismissed on February 25, 2013.

Williamson was not arrested on the federal warrant and transported from the Douglas County Jail to the federal courthouse for his first appearance in federal court until March 5, 2013. Detective Slifer testified that the delay was caused by two snow storms that occurred during that time period. During the approximately 60 minute drive from Lawrence, Kansas to the federal courthouse in Kansas City, Kansas, Williamson was not advised of his Miranda rights and made incriminating statements to the transporting officers, Detectives Slifer and Warren Burkett. Those statements were recorded by the transporting officers without Williamson's knowledge. Williamson appeared for his first appearance in federal court at 4:00 p.m. on March 5, 2013.

## III.    MOTION TO SUPPRESS STATEMENTS

### A.    June 4, 2012 Statements

Defendant Williamson moves to suppress statements he made while being interrogated at the Chain of Lakes Correctional Facility in Chain of Lakes, Indiana on June 4, 2012. He argues that his statements should be suppressed because the interrogating officer's failure to fully record his statements resulted in the destruction of potentially useful evidence, and thus triggering an analysis under *Arizona v. Youngblood*.[4] Williamson argues that the questioning at issue occurred over a period of more than two hours, and a complete recording of that questioning would have been helpful for litigating the admissibility of the statements, as it would have supported his claim that he was under distress during the questioning. The recording would have been helpful also for challenging the Government's evidence regarding exactly what he purportedly said during the questioning. According to Williamson, the usefulness of the recording is implicit in the detectives' decision to record the questioning.

The Government counters that there is no constitutional requirement that an interrogation be recorded, and the exclusion of Williamson's statements on this basis is therefore not warranted. The Government also contends that suppression of the evidence is not warranted on the basis the Williamson's statements were not voluntarily. The Government argues that Williamson voluntarily, freely, and willingly made the statements to the detectives. His encounter with detectives was polite and professional. After being read his rights pursuant to *Miranda*, Williamson agreed to speak with the detectives. The Government points out that Williamson is a 36 year old man with at least average intelligence with no language barriers. He

---

[4] 488 U.S. 51 (1988).

was able to understand his rights as they were read to him and was aware he was under no obligation to give an interview.

Initially, the Court notes that there is currently no *federal* statute[5] or rule that requires a police custodial interrogation to be electronically recorded. Any state laws or rules that may require electronic recording of a custodial interrogation[6] are not applicable to the Court's analysis here under Fed. R. Evid. 402, which limits this Court's determination of admissibility of relevant evidence to the U.S. Constitution or a *federal* statute or rule.

The Court must therefore look to the U.S. Constitution and relevant federal caselaw to analyze whether the interrogating officers' failure to record the entire June 4, 2012 interrogation violated Williamson's due process rights by failing to preserve potentially useful evidence. In *Arizona v. Youngblood*,[7] the Supreme Court explained that a defendant could set forth a due process violation by showing police acted in bad faith in failing "to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant."[8] The Court explained:

> We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable

---

[5] U.S. House Bill 6245, called the Effective Law Enforcement Through Transparent Interrogations Act of 2010, which requires the electronic recording of custodial interrogations in federal criminal cases, was introduced in the House of Representatives on September 29, 2010, but died in committee and was not enacted.

[6] Kansas currently does not require electronic recording of custodial interrogations. *See* Kan. Senate Bill No. 175, introduced in February 2011 and would have required the videotaping of felony custodial interrogations, but died in committee on June 2012. Indiana, where the interrogation took place, however does require electronic recording of custodial interrogations of felony criminal prosecutions, but has an exception for equipment malfunction. *See* Ind. Evid. R. 617(a) (applying to statements made on or after January 1, 2011).

[7] 488 U.S. 51 (1988).

[8] *Id.* at 57.

bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.[9]

Assuming *arguendo* that a complete recording of the two and half hour interrogation would have been "potentially useful evidence," Williamson has not shown bad faith on the part of the interrogating detectives in failing to record the interrogation in its entirety. There has been no evidence showing or even suggesting the interrogating detectives acted in bad faith when they failed to fully record Williamson's interrogation. By all indications, the lack of a complete recording of the interrogation appears to be due solely to the recording device's battery failing, unbeknownst to the detectives at the time it occurred. Detective Slifer testified that he intended to record the entire interrogation and was not aware the recording device had stopped recording until after the interrogation was over. Detective Schneider testified that he became aware that the device's light came on at some point during the interrogation, but decided to not stop the interrogation as he thought it would break the flow of the interview. He testified that he thought he put a full battery in the device, but evidently the batteries were not fully charged. The Court also notes that the recorded portion of the interrogation reveals a polite and professional exchange between Williamson and the detectives. There has been no evidence of bad faith with respect to the partial recording or an evidence suggesting that the detectives deliberately turned off the recording device to prevent the recording of potentially exculpatory evidence or hide duress-based tactics in obtaining Williamson's incriminating statements.

Absent a showing of bad faith on the part of the interrogating detectives in failing to record the entire Williamson's interrogation, the failure to completely record it is not a denial of

---

[9] *Id.* at 58.

due process of law under *Youngblood*. Accordingly, it is recommended that Defendant Williamson's Motion to Suppress Statements he made while being interrogated at the Chain of Lakes Correctional Facility in Chain of Lakes, Indiana on June 4, 2012 be DENIED.

**B.      March 5, 2013 Statements**

Defendant Williamson also moves to suppress statements he made while being transported from the Douglas County, Kansas jail to his first appearance in federal court on March 5, 2013.  He argues that the statements should be suppressed under the McNabb-Mallory rule and 18 U.S.C. § 3501(c) because they were made more than six hours after his detention on federal charges and prior to his presentment to a magistrate judge.  He further argued at the hearing that the nature of the officers' comments turned the exchange into an interrogation under *Rhode Island v. Innis*,[10] and his statements should thus be suppressed because he was not read his Miranda rights before making the statements.

The Government responds that Williamson's recorded statements should not be suppressed because any incriminating statements he made while in federal custody were volunteered while he and the transporting agents were engaged in small talk during the transport. His unsolicited statements were the result of his spontaneously voluntarily offering the statements and were not the result of any officer questioning. As such, his statements were voluntarily given without interrogation under 18 U.S.C. § 3501(d) and should not be suppressed.

**1.      Suppression Based Upon Lack of Miranda Warning**

The Fifth Amendment to the United States Constitution secures the individual right against compelled self-incrimination.[11] The long and intricate history of our legal system

---

[10] 446 U.S. 291 (1980).

[11] U.S. Const. amend. V.

underscores the need for vigilance in protecting and preserving this constitutionally enshrined privilege. Consequently, in *Miranda v. Arizona*,[12] the U.S. Supreme Court established procedural safeguards aimed at ensuring Fifth Amendment protections in the face of "overzealous police practices."

Under Miranda "the prosecution may not use statements . . . stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."[13] Specifically, "prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." [14]

In *Rhode Island v. Innis*,[15] the Supreme Court held that the Miranda safeguards come into play whenever a person in custody is subjected to "either express questioning or its functional equivalent."[16] The term "interrogation" under Miranda refers not only to express questioning, but also "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."[17] The inquiry is "an objective one," and focuses on the "perceptions of a

---

[12] 384 U.S. 436 (1966).

[13] *Id.* at 444.

[14] *Id.*

[15] 446 U.S. 291 (1980).

[16] *Id.* at 300–01.

[17] *Id.* at 301.

reasonable person in the suspect's position rather than the intent of the investigating officer."[18] This focus reflects the fact that the Miranda safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police.[19] A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation.[20] But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response.[21]

Once both elements—custody and interrogation—are present, the procedural safeguards of Miranda apply. Under these circumstances, the admissibility at trial of any statement is conditioned on warning a suspect of his rights.[22] Thus, "failure to give the prescribed warnings and obtain a waiver of rights before custodial questioning generally requires exclusion of any statements obtained."[23] The prosecution bears the burden of proving, at least by a preponderance of the evidence, the Miranda waiver,[24] and the voluntariness of the confession.[25]

---

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.* at 301–2.

[22] *Missouri v. Seibert*, 542 U.S. 600, 608–09 (2004).

[23] *Id.*

[24] *Colorado v. Connelly*, 479 U.S. 157, 169 (1986).

[25] *Lego v. Twomey*, 404 U.S. 477, 489 (1972).

Here, the Court finds that Williamson was in "custody" at the time he made the statements. He had just been arrested on the federal charges and was being transported from Douglas County Jail to his initial appearance in federal court on those charges. The Court must then next determine whether the exchange between Williamson and detectives during his transport constituted an "interrogation" under *Rhode Island v. Innis,* and which would invoke the procedural safeguards of *Miranda*.

At the March 11, 2014 suppression hearing, the Court listened to the audio recording of Williamson and the detectives' conversation during Williamson's transport to his first appearance in federal court. A transcript of the recording was also entered into evidence.[26] After listening to the recording and reviewing the transcript, the Court concludes that the exchange between Defendant Williamson and the detectives—while not beginning as an interrogation— eventually turned into one. The trip started out with Williamson and the detectives talking about non-case-related topics such as the weather, global warming, ancient aliens, radio waves, martial arts, and other assorted topics. At approximately 38 minutes into the audio recording, the discussion shifted into topics relevant to Williamson's case. While Williamson was the one who initially shifted the conversation topic, the nature of the detectives' ensuing comments and remarks transformed the exchange into a subtle interrogation. The detectives made encouraging remarks that they should have known were reasonably likely to elicit further incriminating statements by Williamson and to keep Williamson talking on the topic. One of the transporting officers was detective Slifer, who was one of the lead investigators on the case. The detectives also knew that Williamson's statements were being recorded and that Williamson was unaware of the recording. Even though some of Williamson's initial statements appear spontaneous and

---

[26] Def. Ex. 6.

are a change from the previous topic of conversation, the transporting officers' subsequent comments inviting Williamson to continue talking about the subject were what turned the exchange into an interrogation. Specifically, the Court finds the detectives' comments and questions made at the following sections of the audio recording transcript reflect words that they should have known were reasonably likely to elicit incriminating responses from Williamson and thus turned the exchange into an interrogation: 38:33–42, 39:11–24, 39:30–39, 41:58–42:29, 45:33–37, 46:31–33, 48:19-26, 49:48–50, 51:44–45, 51:55–56, 56:23, and 57:00–01.

As the Court finds that the March 5, 2013 statements Defendant Williamson made while being transported to his first appearance in federal court were during what turned into an interrogation, the failure of the detectives to read him his Miranda rights require the suppression of his March 5, 2013 statements.

### 2. Suppression Based Upon Delay in Presentment under McNabb-Mallory Rule

Williamson also argues that his March 5, 2013 statements should be suppressed under the McNabb-Mallory rule and 18 U.S.C. § 3501(c) because they were made more than six hours after his detention on federal charges and prior to his presentment to a magistrate judge.

The rule known as McNabb–Mallory generally renders inadmissible confessions made during periods of detention that violate the prompt presentment requirement of Fed. R. Crim. P. 5(a).[27] In 1968, Congress enacted 18 U.S.C. § 3501 in response to the Supreme Court's rulings in *Miranda* and the McNabb-Mallory rule. Section 3501(a) provides that in any criminal prosecution brought by the United States, a confession of guilt or any incriminating statement shall be admissible in evidence if voluntarily given. Section 3501(c) further provides that a confession is not generally inadmissible solely because of delay in bringing a person before a

---

[27] *United States v. Alvarez-Sanchez*, 511 U.S. 350, 354 (1994).

magistrate if the confession was voluntarily made within six hours immediately following arrest or detention.

> [A] confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate judge . . . if such confession is found by the trial judge to have been made voluntarily . . . and if such confession was made or given by such person within six hours immediately following his arrest or other detention: Provided, That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate judge or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate judge or other officer.[28]

Subsection (d) of 3501 further limits suppression of voluntary confessions. It provides that "[n]othing in this section shall bar the admission in evidence of any confession made or given voluntarily by any person to any other person without interrogation by anyone, . . . ."[29]

In *Corley v. United States*,[30] the Supreme Court held that 18 U.S.C. § 3501 modifies McNabb-Mallory without supplanting it.[31] Under the rule as revised by § 3501(c), a district court with a suppression claim must find whether the defendant confessed within six hours of arrest unless a longer delay was reasonable considering the means of transportation and the distance to be traveled to the nearest available magistrate judge.[32] If the confession came within that period, it is admissible, subject to the other Rules of Evidence, so long as it was "made voluntarily and .

---

[28] 18 U.S.C. § 3501(c).

[29] 18 U.S.C. § 3501(d).

[30] 556 U.S. 303 (2009).

[31] *Id.* at 322.

[32] *Id.*

. . the weight to be given [it] is left to the jury."[33] If the confession occurred before presentment and beyond six hours of arrest or detention, however, the court must decide whether delaying that long was unreasonable or unnecessary under the McNabb-Mallory cases, and if it was, the confession is to be suppressed.[34]

Delay and the presentment rule does not begin to operate, and the six-hour safe harbor period is not implicated, until a person is arrested or being detained for violation of federal law.[35] As the Supreme Court explained in *United States v. Alvarez-Sanchez*,[36] the "arrest or other detention" referenced by 18 U.S.C. § 3501(c) must be an "arrest or other detention" for a violation of *federal* law.[37] If, instead, the person is arrested and held on state charges, § 3501(c) does not apply, and the safe harbor is not implicated. This is true even if the arresting officers believe or have cause to believe that the person also may have violated federal law.[38] As long as a person is arrested and held only on state charges by state or local authorities, the provisions of § 3501(c) are not triggered.[39]

In this case, the federal indictment charging Williamson was returned on February 13, 2013 and a federal arrest warrant issued the same day. The Kansas state charges against

---

[33] *Id.* (quoting 18 U.S.C. § 3501(c)).

[34] *Id.*

[35] *Alvarez-Sanchez*, 511 U.S. at 358; *United States v. Smith*, 606 F.3d 1270, 1278 (10th Cir. 2010); *United States v. Ambriz-Valenzuela*, No. 11-10004-02-EFM, 2011 WL 2579773, at *7 (D. Kan. June 28, 2011).

[36] 511 U.S. 350 (1994).

[37] *Id.* at 358 (emphasis in original).

[38] *Id.*

[39] *Id.*

Williamson were dismissed on February 25, 2013. He continued to be held in custody of the Douglas County Jail until March 5, 2013 when he was arrested on the federal warrant and brought before the magistrate judge for his first appearance in federal court. For purposes of the six-hour rule set forth in 18 U.S.C. § 3501(c), the Court determines that the six-hour period commenced at the time when the Kansas state law charges were dismissed on February 25, 2013. At that time, Williamson was no longer being detained upon the state charges and was only being held on charges based upon violation of federal law. Although he continued to be held in non-federal custody in the Douglas County Jail and was not arrested on the federal warrant until March 5, 2013, a hold on the federal charges began once the state law charges were dismissed on February 25, 2013. His alleged incriminating statements while being transported to his initial appearance eight days later on March 5, 2013 thus were not made within six hours immediately following the start of his detention on federal charges.

Having determined that Williamson's incriminating statements—made before presentment to a magistrate judge on the federal charges—were not made within six hours of his detention on the federal charges, the Court finds that 18 U.S.C. § 3501(c) does not apply. The Court further finds that Williamson's statements were not given "voluntarily without interrogation" under 18 U.S.C. § 3501(d). The eight-day delay, even considering the intervening inclement weather, in presenting Williamson before the magistrate judge thus warrants suppression of the statements he made on March 5, 2013.

Accordingly, it is recommended that Defendant Williamson's Motion to Suppress Statements be GRANTED with respect to the statements he made while being transported from Douglas County Jail to federal court on March 5, 2013.

## IV.  MOTION TO SUPPRESS EVIDENCE BASED UPON DEFECTIVE SEARCH WARRANT

Defendant Williamson has also filed a motion to suppress evidence seized from his Fort Wayne, Indiana residence by police officers on June 4, 2012 based upon a search warrant he claims is defective and therefore invalid. In his motion, Williamson claims that the search warrant is defective because it fails to document a finding of probable cause, state that it is issued under the authority of the state of Indiana, identify the law enforcement officers authorized to execute it, explicitly state the time and date of its issuance, and provide instructions as to the execution of the warrant, such as the time frame during which it was to have been executed. At the hearing, Williamson further argues that the Indiana search warrant is defective because the officer who presented the affidavit to obtain the search warrant did not actually sign the affidavit, it is does not state that it is a "Search Warrant" on its face, and it fails to contain a time period for execution or command the executing officer to return the warrant.

The Government argues that the district court must examine the legality of the search by state officer as if it were made by federal officers and, thus, the validity of the search must be reviewed only under Fourth Amendment standards. It argues that Federal Rule of Criminal Procedure 41 does not apply to the issuance of state warrants and the exclusionary rule applies to violations this Rule only if the defendant is prejudiced or reckless disregard of proper procedure is evident. The Government also argues that if the Court were to determine the search warrant invalid, the evidence should not be excluded under the *Leon* good-faith exception to the exclusionary rule.

Because the search warrant in this case was not issued at the request of a federal law enforcement officer or an attorney for the Government, Fed. R. Crim. P. 41 governing issuance

of search warrants does not apply.[40] Likewise, Indiana state law[41] does not govern the admissibility of evidence seized pursuant to a state search warrant but ultimately sought to be used in a federal prosecution.[42] "In federal prosecutions the test of reasonableness in relation to the Fourth Amendment protected rights must be determined by Federal law even though the police actions are those of state police officers."[43] Because the exclusionary rule is only concerned with deterring Federal Constitutional violations, "[t]he fact that the arrest, search, or seizure may have violated state law is irrelevant as long as the standards developed under the Federal Constitution were not offended."[44]

The Fourth Amendment's Warrant Clause provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Courts generally interpret the Warrant Clause to require that warrants: (1) contain a particular description of the place to be searched and the persons or things to be seized; and (2) be based upon probable cause supported by oath or affirmation.[45]

---

[40] *See* Fed. R. Crim. P. 41(a) (noting rule applies where warrant is sought by federal law enforcement officer and granted by federal magistrate judge).

[41] Ind. Code § 35-33-5-2 states in pertinent part: "Except as provided in section 8 of this chapter, no warrant for search or arrest shall be issued until there is filed with the judge an affidavit: (1) particularly describing: (A) the house or place to be searched and the things to be searched for; . . . (2) alleging substantially the offense in relation thereto and that the affiant believes and has good cause to believe that: (A) the things as are to be searched for are there concealed; . . .; and (3) setting forth the facts then in knowledge of the affiant or information based on hearsay, constituting the probable cause."

[42] *See United States v. Le*, 173 F.3d 1258, 1264 (10th Cir. 1999) (rejecting the assertion that state law standards, rather than federal constitutional standards, govern the admissibility of evidence seized pursuant to a state warrant).

[43] *Id.*

[44] *Id.* at 1265.

[45] *United States v. Mesa-Rincon*, 911 F.2d 1433, 1436 (10th Cir. 1990).

As required by the Fourth Amendment, the Indiana June 4, 2012 search warrant at issue here contains a particular description of the place to be searched and the things to be seized. It also is based upon probable cause supported by the oath or affirmation of detective Slifer when he presented his affidavit to Allen County Indiana Circuit Court Senior Judge Robert Schmoll. Although detective Slifer mistakenly failed to sign the affidavit he presented to Judge Schmoll, this does not violate the Fourth Amendment. The Warrant Clause does not require a signed and sworn affidavit, but only that probable cause be supported by oath or affirmation.[46] The Fourth Amendment does not prescribe any particular form of oath or ritual for the swearing of an oath.[47] Hence, many different variations in oath language and oath practices have been held to be constitutionally acceptable, provided only that each serves to assure the magistrate that the affiant is telling the truth.[48] As has been recognized by a leading treatise on search and seizure, "a written affidavit is not per se defective because it contains no signature or because it is shown that the signature was affixed subsequent to the search; in such instances it is still open to the prosecution to show by testimony that the affiant had taken an oath."[49] Here, both detective Slifer and detective Schneider testified that detective Slifer was sworn by Judge Schmoll to the truth and veracity of the affidavit that detective Slifer presented in support of the June 4, 2012 search warrant. Judge Schmoll then signed the affidavit and the warrant. Detective Slifer also

---

[46] *United States v. Clyburn*, 24 F.3d 613, 616 (4th Cir. 1994).

[47] John M. Burkoff, *Search Warrant Law Deskbook* § 6:4 (2014).

[48] *Id.*

[49] Wayne R. LaFave, *Search And Seizure: A Treatise On The Fourth Amendment*, 2 Search & Seizure § 4.3(e) (5th ed*.). See also United States v. Henry*, 931 F. Supp. 452, 453–54 (S.D. W. Va. 1996) (denying motion to suppress evidence where affiant law enforcement officer failed to sign the affidavit for search warrant, but did sign a separate sworn declaration on the search warrant referencing the affidavit).

signed the search warrant under the following sentence: "Affiant states the following facts which he has reasonable grounds to believe and does believe to be true." The testimony that detective Slifer was sworn by the judge who issued the search warrant, the judge's signature on the affidavit, and detective Slifer's signature on the warrant indicating that he was affirming the facts in the affidavit to be true are sufficient to satisfy the Fourth Amendment's requirement that probable cause be supported by oath or affirmation.

Defendant Williamson also argues that the search warrant is defective because it lacks of an express finding of probable cause on the face of warrant. The Court has reviewed the applicable Indiana statutes, Ind. Code 35-33-5-1 through 35-33-5-3, and concludes that this not required under the statutes. Even the form search warrant set out in Indiana Code 35-33-5-3 does not have any language making an express finding of probable cause to issue the warrant. The search warrant is therefore not defective based upon lack of an express finding of probable cause on its face.

Williamson next claims that the search warrant is invalid because it does not state that is a search warrant or issued under the authority of the state of Indiana. As pointed out by the Government, "State of Indiana, County of Allen" is printed at the top of the search warrant. So Williamson is incorrect on this point. With regard to the lack of the title "Search Warrant," a cursory reading of the document would reveal that it is a search warrant as it mentions the issuance of a search warrant in the first line of the body of the document. The Court also notes that the Indiana form search warrant does use the title of "Search Warrant."

Williamson next asserts that the search warrant is defective and differs from the Indiana form search warrant because it fails to identify the law enforcement officers authorized to execute it. Williamson is correct that the search warrant fails to state to whom it is addressed.

The Indiana form requires this. The two other search warrants obtained by detective Slifer also have "TO ALL LAW ENFORCEMENT OFFICERS OF THE STATE OF KANSAS" prominently displayed on them. The Indiana form also includes the language "You are authorized and order, in the name of the State of Indiana, with the necessary and proper assistance to enter into or upon . . . and there diligently search for . . . ." There is no such similar language on the search warrant here.

The final deficiency alleged by Williamson is the search warrant's failure to explicitly state the time and date of its issuance, and provide instructions as to the execution of the warrant. This information does not appear to be required on search warrants under the Indiana statutes.

Although the search warrant has a few technical deficiencies, as discussed above, the Court concludes that none of the identified technical deficiencies rise to the level of requiring suppression of the evidence seized pursuant to that search warrant. The Supreme Court in *United States v. Ventresca*,[50] has recognized that the Fourth Amendment's commands are "practical and not abstract," and affidavits for search warrants should be tested and interpreted by courts in a "commonsense and realistic fashion."[51] Noting that because search warrants are normally drafted by nonlawyers in the midst and haste of a criminal investigation, "[t]echnical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting."[52]

---

[50] 380 U.S. 102 (1965).

[51] *Id.* at 108.

[52] *Id.*

And the Tenth Circuit has repeatedly reaffirmed that it does not take a "hypertechnical approach" to search warrants.[53]

Even if the Court were to find that the search warrant was technically invalid, the *Leon* exception would apply here. In *United States v. Leon*,[54] the Supreme Court announced an exception to the Fourth Amendment's exclusionary rule, providing that evidence seized under a warrant later found to be invalid may be admissible if the executing officers acted in good faith and with reasonable reliance on the warrant.[55] "[T]he suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule."[56] Moreover, it is clear that an "officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, and it is clear that in some circumstances the officer will have no reasonable grounds for believing the warrant was properly issued."[57]

In *Massachusetts v. Sheppard*,[58] the Supreme Court applied the *Leon* good faith exception to a technical deficiency in a search warrant. It noted it had already decided that the exclusionary rule should not be applied when the officer conducting the search acted in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate that

---

[53] *United States v. Massey*, 687 F.2d 1348, 1356 (10th Cir. 1982); *United States v. Rome*, 809 F.2d 665, 669 (10th Cir. 1987).

[54] 468 U.S. 897 (1984).

[55] *Id.* at 916.

[56] *Id.* at 918.

[57] *Id.* at 922–23.

[58] 468 U.S. 981 (1984).

subsequently is determined to be invalid.[59]  It then noted the sole issue before it was whether the officers reasonably believed that the search they conducted was authorized by a valid warrant. Finding there was no dispute that the officers believed that the warrant authorized the search that they conducted, the only question for the Court was "whether there was an objectively reasonable basis for the officers' mistaken belief."[60] The Court further commented that while an error of constitutional dimensions may have been committed with respect to the issuance of the warrant, it was the judge, not the police officers, who made the critical mistake with respect to the search warrant.[61] "[T]he exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of magistrates and judges."[62]

In this case, the Court finds that the detectives reasonably believed that the search they conducted of Williamson's residence was authorized by a valid search warrant.  The Kansas detectives traveled to Indiana—a jurisdiction they were not familiar—to apply for a search warrant there.  They consulted with local law enforcement and relied upon them to provide them with the information necessary to properly obtain the search warrant. Upon presenting what they believed were a sufficient affidavit and warrant, the judge signed the search warrant.  The detectives therefore had an objective reasonable basis to believe the search they conducted of Williamson's residence was authorized by a valid search warrant. The *Leon* exception thus applies here.

---

[59] *Id.* at 987–88.

[60] *Id.* at 987–88.

[61] *Id.* at 990.

[62] *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 263 (1983)).

Accordingly, it is recommended that Defendant Williamson's Motion to Suppress Evidence seized under the allegedly defective June 4, 2012 Indiana search warrant of his residence be DENIED.

## <u>RECOMMENDATION</u>

For the reasons set forth below, it is recommended that Defendant Williamson's Motion to Suppress Statements (ECF No. 20) be **GRANTED IN PART AND DENIED IN PART**. The Motion to Suppress Defendant Williamson's June 4, 2012 statements made at the Chain of Lakes Correctional Facility be **DENIED**, and the Motion to Suppress his March 5, 2013 statements made while being transported to his first federal appearance be **GRANTED**. It is further recommended that Defendant Williamson's Motion to Suppress Evidence (ECF No. 21) be **DENIED**.

Dated this 18th day of March, 2014, at Kansas City, Kansas.

<u>s/ David J. Waxse</u>
David J. Waxse
U. S. Magistrate Judge